on evidence, and only evidence, that they had possessed positioned icebergs of cocaine. Okay, so when we get to sentencing in this case, the court says, yes, you've shown those, but there are two reasons why I don't think you meet the Fifth Circuit burden for showing a realistic probability. And he listed those, number one, these were mere possession cases, and number two, these were guilty pleas. They weren't appellate decisions. So, moving forward, between then and now, the thing that has changed is the Justin Taylor decision from the United States Supreme Court. The Justin Taylor decision, I would submit, resolves a long-running dispute that non-citizens and criminal defendants have had in the Fifth Circuit with the government over what is the job of the realistic probability test. Why do we do it? When do we have to do it? Et cetera. Justin Taylor, it was in the context of a federal offense. That was the predicate offense that we carried. That was the instant offense. But Justin Taylor, in distinguishing Duane S. Alvarez, Justin Taylor said that the purpose of the approach is to illuminate the meaning of an indeterminate statute. Well, that should take the entire question of realistic probability off of the table here, because there is no question about the meaning of the Texas statute that defines Penalty Group 1, because the statute plainly says that it's included. And I would say that's why every other circuit who has considered it has held that if a controlled substance list is broader than the federal equivalent, then that's enough. Every circuit has held that. The Texas statute here is 481. What's the underlying statute of offensive conviction? The offensive conviction, I think, is 482.112a. I think that's for both of ours. And didn't we construe that in this same situation in the Clark decision? In the Clark decision, the court did construe this statute in the Clark decision. I will say that Mr. Clark's attorney briefed this issue, but the court did not address this issue. It's a first for me. I don't know what the approach is. Again, this is another long-running dispute. Judge Smith wrote a very powerful dissent in Castillo-Rivera about that issue, about what to do about the rule of orderliness when an issue wasn't raised and wasn't addressed or was seemingly addressed but not raised. Here, this is the opposite of that. The issue was raised, but it wasn't addressed at all. Mr. Clark's case was sent back to the district court. He had prevailed the first time. And so it's possible that the court simply declined to exercise its discretion to affirm on an alternative basis. But fundamentally, that's a published ruling that finds that this, it does qualify as a serious drug offense, doesn't it? You're just saying they were presented with a counter-argument, they didn't address it, but nonetheless, the legal holding, am I right, is construing this statute and saying it counts? There have been a lot of cases, including Clark, has construed this statute and say that it counts. So just to get to understand how our panel could deviate from that, the argument would be the technical one you're describing, the rule of orderliness, that the ruling is what it states legally, but we can avoid it because you're coming up with an argument that was presented to that panel, but it didn't affirmatively address. Is that what you're asking us to do? Yes, and it wasn't necessary for the panel to address that argument, again, because the case was going to go back. That was not a basis of the district court's decision. So Mr. Clark was, during the first appeal, a prevailing party, and the court has discretion to affirm on an alternative basis, but it's not required to do so. I do wish we would have known which it was. The court just said it's wrong, we're not going to tell you why it's wrong, but just stress this, it's wrong, or we're not going to worry about that, we're just going to address the arguments that were raised. Did the panel distinguish Shuler in that, they did, and they announced Shuler? They distinguished Shuler as to the offer to sell argument. Now, and this gets, again, so Ochoa-Salgado is the case about offer to sell in the immigration context, and Ochoa-Salgado, I think, potentially resolves the previously unresolved question about meta precedent, if you will. Ochoa-Salgado says, you know, this wasn't addressed before, this wasn't decided, so that piece of it probably supports me. As we said in the briefing, I'm not sure that Ochoa-Salgado accounted for all of the prior precedent or not on the issue of offers to sell. I think that this panel is bound by the decisions that hold. Texas delivery can be accomplished by a mere offer to sell, with no drugs ever. I think you're bound by the Texas decisions, and I think that you're bound by decisions. I have sent a case to my friend, I've really just, a friend sent it to me yesterday, it was August the 15th, it's called, I want to say Campos, but, or Campos from the Eighth Circuit, I'll get you the exact name and case number before. I didn't get that in a 28-J, I already filed a 28-J, you know, earlier that day, so I did not want to do a second one this close to argument, but they addressed the Ochoa-Salgado argument and agree with us that Texas does allow for cocaine. I think that Clark, unless you could distinguish Ochoa-Salgado on the basis that I suggest, which is to say that it departed from prior precedent impermissibly, Clark does address the offer to sell piece of our argument. Clark does not address the position isomers of cocaine argument. And so, I'm sorry, I get it's very complicated, it's not how I'd like it to be, but I think that it is open for this court to say that the least culpable conduct for delivery in Texas is an offer, a mere offer to sell a position isomer of cocaine, such as Norcocaethylene or alpha cocaine or beta cocaine. These are compounds that truly exist and they are compounds that courts have held, are not federally controlled, because they're not, they're almost purposefully excluded. Texas is broader in that regard. And so, in that sense, I don't think that if we were starting from a clean slate that the government could prevail in this case. Again, they're left without a leg to stand on, given Justin Taylor. It said the whole reason you're looking for these prosecutions is just to illuminate the meaning of an uncertain state statute. And the Supreme Court said federalism is the reason that we do that in a state context. You cited to us the Second Circuit case that agrees with you. What's your response to the government's response? The response to the government's response is that they had a different definition of realistic probability. So, I think that the government has helpfully agreed, my friend can correct me if I'm wrong, that this circuit pre-Justin Taylor stood alone in an outcome determinative way in this case, which is always a good thing to have in your Circuit. But I think Justin Taylor, I don't even think you have to say it overruled Castillo-Rivera or overruled Herald's application of realistic probability. I think all you could say is, in light of Justin Taylor, the cases that Mr. Kerstetter has cited to the District Court have got to be good enough. In other words, it's enough to meet this extremely high burden when we know that Texas courts do accept pleas. And I think that one of the exhibits that the government filed below was a lengthy evidentiary hearing in another case. The appeal has been dismissed in the other case. The District Court ultimately said, all of this evidence that we put on is improper for me to consider. It doesn't matter. But what the government was doing there to get around the realistic probability showing is to challenge Texas prosecutors from Dallas and Harris County. How could you let him plead to this when the facts weren't that? I think this shows you that the train has gone off the tracks when you get to that point. This Court's job, especially in an armed career criminal in that case, is simply to say, what are the elements of the offense of which he was convicted? What was necessarily established? It doesn't matter what the conduct was. What are the elements? Well, we know that the Texas offense includes position isomers of cocaine. And so in that sense, I think that we would prevail, certainly as to the conviction that's explicitly premised on cocaine. You'll get to different occasion just because that's an interesting configuration. Are we controlled by our law, but the government won't, I guess we'll ask them, defend it? Is that your view? Would it require en banc treatment? So far, the government has conceded everywhere, including when it went to en banc. But the government has defended, as far as I know, every case on the grounds of harmlessness. So if the error is failure to submit to a jury, the government would say, well, here are all these other facts. This Court, and it may be the only circuit that's done it. I stopped looking at this a few months ago, and I was working on something else. But I think this Court has sort of taken a middle ground approach, which is to say, yes, there are Sixth Amendment implications to the separate occasions question. But we can resolve that by adhering to the Fifth Circuit precedent that says you are limited to shepherd documents. You know, you are limited to basically making a categorical approach determination about separate occasions. That's very difficult because the wooden inquiry requires the District Court or this Court to consider factors that shepherd documents are silent to. And I think more importantly than that, and this is in response to your question, we did not brief it this way in this case because, you know, at the initial brief we had the concession. I didn't, it was before all of this development had happened. If we're doing the categorical approach, from Descamp and from Mathis, we know that the only things you can look at from those documents are things that are critical to the conviction itself. So the elements, if you will, or other things that were necessarily true of it. So I would submit that under that approach, under the Fifth Circuit approach, combined with what we know about Sixth Amendment jurisprudence and categorical approach generally, it's going to be like, there's an immigration case called Carachuri-Rosendo v. Holder that, you know, the recidivism provision. In other words, you would need case A to be in the shepherd documents necessary to the disposition for case B. And, you know, I guess you would need A and B to get C or maybe, you know, something like the prior in the documents. Is the argument, are you preserving the argument to challenge Valencia in the full court, or are you saying there's some way we could look past Valencia? So Valencia, Valencia does seem to go their way, and I'll agree with that, based on prior precedent. The only thing I would ask you to do is consider whether non-elemental facts can be used when you're looking at the shepherd documents. In other words, it's not just a question of what evidence may the court consider, but what questions may the court present to that evidence. And in the way that Mathis and Decomp say that even limited to shepherd documents, you're limited in what you can look for, I would say the same thing would be appropriate if you're going to take the Fifth Circuit approach, which is you're limited to shepherd documents. And if not, then again, going back to the point that I started with, you're going to build yourself a new Sixth Amendment problem. Now again, you have federal judges who are making decisions based on non-elemental facts, their review of the brute facts of the cases that were not essential to the determination. Your Honor, if we have no further questions at this time, I think I'll reserve some time for rebuttal. May it please the court, Ryan Niedermeyer for the United States. The only possibly non-foreclosed issue for this court to consider is whether or not Dylan Kerstetter's prior Texas conviction for delivering methamphetamine is a ACA qualifying offense. And the answer to that question is yes, for two reasons. First, Texas's Penalty Group 1 is a divisible statute. And because it's divisible, this court can use the modified categorical approach to look at Kerstetter's shepherd documents and see that he was convicted for delivering methamphetamine, which is a federally controlled substance. Second, even if Penalty Group 1 weren't divisible, Kerstetter can't show realistic probability that Texas is prosecuting the delivery of positionizers of cocaine by pointing to mere uncontested guilty pleas for a different offense than the one that he committed. So with the court's permission, I'll start with the divisibility of Penalty Group 1. Maybe start with the Second Circuit decision. That was briefed in the 28J, Your Honor. Simply put, first of all, the Second Circuit did not look at the divisibility of Penalty Group 1. It only asked, is this overbroad? It didn't apply Duane's Alvarez because the Second Circuit simply says if a statute is overbroad, that's all we need. We don't need to go further. But as this court knows, that's not what this court does. This court, after Castillo-Rivera, doesn't stop at a statute that's defendant point to his case or some other case that shows, I'm sorry, case law that shows that the state is prosecuting non-generic conduct. So conduct that goes outside of the ACCA. And a guilty plea would count as a prosecution, right? It would count as a prosecution, Your Honor. But I think what's important here is that this court has never held that a mere guilty plea satisfies the realistic probability test. Instead, what we look at is case law. And this court has used the term case law when it talks about the realistic probability test. A perfect example of that is Montgomery. Does that make sense, though? I mean, I guess you'll point me to the published opinion that says exactly that. With guilty pleas, you're never going to get case law. So 90% of the criminal law enforcement world won't end up in a case. But of course, the state is prosecuting immense numbers of that. So I think it does make sense, Your Honor. And these guilty pleas themselves show why it makes sense. These guilty pleas are less than five years old. I'm sure Mr. Kersetter looked through thousands of Texas convictions and came up with two guilty pleas that were less than two years old for possession, simple possession, not delivery, of positioned isomers of cocaine. And I'll break down both of those guilty pleas. The first one, Roweta Aguilar. The defendant was indicted for possessing cocaine, not positioned isomers of cocaine. And then when it came time to judicially confess, cocaine is scratched out and positioned isomers of cocaine is written in. And then in the second case, Santos, which that conviction came after Alexis V. Barr. Again, the defendant was indicted for cocaine. He judicially confesses to position isomers of cocaine. And it's written under immigration consequences. You can see this at ROA 808. Defendant was previously ordered deported and has an outstanding order of deportation. However, by accepting this plea, client may remain eligible to request relief if an attorney in immigration court argues that this offense is not a controlled substance offense. But to discount those, aren't you trying to get away from the categorical approach? In other words, it may be counterfactual. We may know these people were actually charged with qualifying crimes, but we're not supposed to look at that. So it isn't a simple truth. There is a possibility you can be convicted in Texas under 112 for non-controlled substances offenses. I think, Your Honor, when we talk about realistic probability, we're already putting caveats on the categorical approach. When we ask realistic probability, we're inherently asking, is this a factual situation that the state could prosecute? And here, why the point that I make with these guilty pleas is this is why it's important to not use uncontested guilty pleas based off of indictments with little facts to show actively that the state is prosecuting conduct, especially where courts across the country have recognized this substance, position isomers of cocaine. The Tenth Circuit said it's a debatable proposition that they exist in the drug trade. And then the descending judge in Myers that the government put in its 28-J response said that it's doubtful that these isomers exist outside of a lab. So what we have here is we have uncontested guilty pleas again that didn't go through appellate courts. We have one defendant who explicitly pled guilty in order to avoid federal immigration consequences. And now Mr. Kerstetter wants to use that to show that the state is actually prosecuting substances that don't exist in the drug trade. And I don't think this court allows that. This court looks at case law when it's applying the realistic probability test. For example, in Harold, this court looked at case law. It looked at appellate court decisions. In Montgomery, this court looked at the New Jersey Supreme Court when it found that the realistic probability test was met. Do you only win on that approach? I thought Clark was binding regardless of whether we accept that guilty pleas can or can't show state prosecutions. Your Honor, I... Okay, so I guess the question is, does Clark stand on all fours with this case? It's hard for me to say that it stands on all fours. I agree that this issue was briefed in Clark, um, but the court did not decide this particular issue. Now... But it did decide a 112 conviction. It did. It did, Your Honor. And I... It also, I think, necessarily had to decide this issue in order to send it back to the district court because Clark had burglaries in a drug offense and the court couldn't stop at burglary. He had to get all three. And so the court necessarily had to decide... Where's your hesitancy? And I appreciate the candor. Yes, sir. My hesitancy is more of, I think, as Mr. Wright pointed out, some of the language in Castillo-Rivera, which I think is different, right, than what we have here. In Castillo-Rivera, we did have a situation where a prior party's concession was being used to bind this court. But that's definitely not what we have here. Mr. Clark did not concede this issue. He actively raised this issue. And this court just did not address that issue. Okay. Thank you. But, uh, to your point, Your Honor, I don't need to win on the realistic probability test to win here. That's because, again, Penalty Group 1 is a divisible statute. And, Your Honor, you were asking about statutes earlier, statutes of what we're dealing with. We're dealing with 48-1.112a is the overall delivery statute under Texas law. But then Penalty Group 1 is 48-1.102. So 48-1.112 says you cannot deliver Penalty Group 1 substance. And then Penalty Group 1 is where Texas defines what is a Penalty Group 1 substance. And it talks about heroin, meth, cocaine. Kerstetter has a meth conviction. And he has two burglary convictions. So if Penalty Group 1 is divisible, this court doesn't even need to reach the realistic probability decision. And as a matter of fact, this court shouldn't reach it because Penalty Group 1 is divisible. So when we're talking about divisibility, as this court knows, we're asking does the statute list elements rather than means? And this court put it well in Alejos Perez when it said, when we're looking at a penalty group statute, we're asking is each listed drug an element of a separate drug offense? Or is it just several means of committing a single drug offense? And under Mathis, this court looks to three resources to determine whether a statute is state case law, the state statute's text, and the defendant's record of prior conviction. In here, state case law shows that Penalty Group 1 is divisible. And that's because each drug listed in Penalty Group 1 is an element of a separate crime. We have several state decisions that have said that. But I want to particularly point this court to Nichols v. State, which is a court of appeals decision, intermarried court decision out of Dallas that explained that each substance in Penalty Group 1 is a separate offense. And it did that in context of allowing the state to amend an indictment. So in that case, the defendant was originally indicted for possessing cocaine. The state went back and amended its indictment over the defendant's objection to, say, possession of meth. Well, the court of appeals said, that's not OK. Because in Texas, the state can't freely amend its indictment if it is going to allege a separate statutory offense. And Nichols looked at the controlling court of criminal appeals case called Watson, which dealt with double jeopardy. And it explained the underlying double jeopardy reasoning might not necessarily apply here. But the legislative intent reasoning does. And it's clear that the Penalty Group 1 to be a separate crime. And because of that, the state can't go back over the defendant's objection and switch out the controlled substance. And so because of that, we see that each drug listed in Penalty Group 1 is a separate statutory offense. So Penalty Group 1 is divisible. And then moreover, this conclusion is corroborated by the statute's text. The statute, while the statute doesn't list alternative punishments for the substance that's possessed, it does not contain an illustrative list of examples that would indicate non-divisibility. So that at least corroborates the state court's decision. And then also, Kerstetter's prior convictions corroborate the fact that this is a divisible statute. When we're looking at prior record of convictions, we're looking at indictment and jury instructions. That's what Mathis says. This court did a great job of that in Herald. Herald has a great divisibility analysis. So we're looking at indictments and jury instructions. Because Kerstetter didn't go to trial, we don't have jury instructions. We have the indictment. And when we look at these indictments, Penalty Group 1 isn't even listed. He's just indicted for delivery of a controlled substance, namely cocaine, in one of his. The other is delivery of a controlled substance, namely meth. So it's not using an umbrella term, which this court and Mathis have said would indicate non-divisibility. Instead, we have a specific substance being named. And we don't even have Penalty Group 1 being listed at all, which again corroborates the that the statute is divisible. And so because the statute is divisible, the court doesn't even need to reach the realistic probability test. It can look at Kerstetter's Shepard documents and see that he was, in fact, convicted of delivering methamphetamine, a federally controlled substance. Back to the realistic probability test, though. You haven't mentioned Justin Taylor. What do you do with that? Yes, Your Honor. Very good point. Justin Taylor does not change this court's realistic probability test. And that's because Taylor explained... First of all, Taylor itself said, put aside the fact that the defendant has shown cases that met the realistic probability test. It explained that Duenas-Alvarez didn't apply because there was not a federalism concern and there were not overlapping statutes. Here, we have both of those things. We have a federal court interpreting a state statute, federalism concerns, and we have a statute that this court has time and time again held overlaps with the ACCA. So we have an overlapping statute. And that's why it's not surprising that the 6th, 8th, and 9th circuits have all held that Taylor did not modify Duenas-Alvarez's realistic probability test. They've looked at this issue. They said it doesn't change anything. And while this court didn't expressly cite Taylor, it still has applied the realistic probability test after Taylor and Ponchi, and that's in the government's 28J. So Taylor really does nothing here to change this court's realistic probability test. Because Mr. Kerstetter briefly brought it up, I will mention the wooden issue here. Kerstetter did not preserve that below. This court is looking at it under plain error. This court is foreclosed by Valencia on the issue. But even if it were not, Kerstetter cannot show that his substantial rights were affected. There's no doubt that these convictions were years, months apart. There is simply no close call that we had in Wooden. And the government's position is now not to defend or to argue in all circuits that it has to go to the jury? Yes, Your Honor. That is the government's position still. But the government recognizes— Any circuit accepted that post-Wooden? Not that I am aware of, Your Honor. I'm happy to— No, no, no. That's fine. Okay. And that certainly was the position that the government put forth in Valencia in the exact position that this court rejected. While the government is still pursuing that position, this court is bound by Valencia. If there are no further questions from the court, I'll cede the rest of my time. All right. Thank you, Mr. Niedermayer. Mr. Wright for rebuttal. Thank you, Your Honor. That case is Campos or Compos 2-1-3524 in the Eighth Circuit on the offer to sell issue. On divisibility, Your Honor, Texas law is tough on this. You know, we tend to think of the elements— In federal court, it usually means the same thing in terms of what has to go in the indictment, what can be amended, what needs to go in the jury instructions, what multiplicity, duplicity, et cetera. Texas is all over the map on those questions. I would just say that this Court's decision in Alejos-Perez does not hold as to Penalty Group 1. But the reasoning of it, as we explained in our brief, the reasoning of it casts doubt on the arguments that the government has raised, even as regards to Penalty Group 1. And that decision has not been overruled. And if you read the sentencing transcript, the district court said, I thought, surely, obviously meth and cocaine are different crimes when he went in. But after examining this Court's opinion, following the road map in the courts, he said, I got to say it's indivisible. And I think that makes—it would be odd for Texas to use the same structure in two, you know, adjacent statutes. One of them applies to Penalty Group 1, one of them to 2A and others, and to do it differently. I will say, too, that one of the decisions the government cited is an unpublished case called Onik, O-N-I-C-K. If you will look at that and look particularly at Onik's footnote 2, that's from the Fort Worth Court of Appeals. They discuss the Watson case, which my friend just mentioned. But they also discuss a case called Ex Parte Broussard. It's in the Onik case footnote 2, B-R-O-U-S-S-A-R-D. That's a case that is hard to reconcile with the divisible portrait of Penalty Group 1. It was that the defendant pled guilty to a crime involving one of these Penalty Group 1 drugs. I think it was meth or heroin. And then the test, lab test, came back after the fact and the court denied relief. And Judge Newell, concurring from denial of rehearing but dissenting from the opinion, says, look, this means that Watson is overruled. Watson itself was a very splintered opinion, that double jeopardy opinion. Watson, I just want to be clear, this court says Watson doesn't control because it's a double jeopardy case. That is in Harold's divisibility analysis, reinstated. It's February 2018, Harold, reinstated by October 2019, Harold. So it's still Fifth Circuit law. And I think this court's decision on robbery recently, United States v. Garrett, says the same thing. There's a court of criminal appeals, double jeopardy opinion. They say that's double jeopardy. That doesn't count. That case is Garrett. In terms of what to do about Watson. But Watson itself is also fractured in the sense that there's a plurality opinion. They don't say who joins the court's opinion. But by my count, it must be four judges who joined the plurality opinion in that one, because there were three judges who join a separate concurring opinion but say, you know, the plurality is wrong about this. And then there are two judges who just concur without opinion, concur in result. So I just think that Texas law is less clear than my friend does on the court of criminal appeals. And I think that's consistent with resolving doubts about divisibility in favor of the defendant, which is what Mathis says that the court is required to do. On the indictment, I will say that the so-called methamphetamine conviction here, the Ellis County conviction, the judgment does not say methamphetamine. I think it says delivery of a controlled substance. So that piece of the Shepard documents, now, I will concede that the Dallas County judgment that says cocaine says put, you know, delivery of a controlled substance to wit cocaine. Asset possession, I think, about Ellis. Ellis County says delivery of a controlled substance is what the Ellis County says. I don't even think Texas courts know the answer to this question. So it's a tougher one to resolve in terms of the divisibility. But I do think on balance, given Alejo's Perez, that we should prevail on that. No Texas case that's gone to trial that you're aware of. So, of course, no Texas jury instructions. I'm sorry. On position Isamer. Yes. On the position Isamer's question. Just these several guilty pleas. What would the appeals be? The plain language of the statute says this is covered. Um, I admit that that's what I did, but I'm appealing anyway, because it matters to some people down the road. I mean, no, it has not been tried because in Texas, the word cocaine is an umbrella term that includes both all. Thank you. All right. Thank you, Mr Wright. Your case is under submission. Case Collins versus Department of the Treasury.